IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANIEL CAVEGN,

                      Plaintiff,
v.                                              OPINION & ORDER

NANCY A. BERRYHILL,                          18-cv-42-jdp
Acting Commissioner of Social Security,

                      Defendant.

---

Plaintiff Daniel Cavegn seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of the Social Security Administration, finding Cavegn not disabled within the meaning of the Social Security Act. The administrate law judge (ALJ) concluded that Cavegn suffered from physical impairments related to his left and right ankles as well as depression and anxiety, but that he retained the capacity to perform a significant number of jobs in the economy, including an assembler, mail clerk, and food preparer.

On appeal Cavegn focuses on his physical impairments, contending that the ALJ erred by failing to: (1) obtain a medical opinion about his left ankle and right knee impairments; (2) adequately consider several of his limitations; and (3) consider the effect of his obesity on his ability to work. The case is scheduled for an oral argument on September 20, 2018, but the court concludes that no oral argument is needed in light of the relatively straightforward nature of the claim. For the reasons discussed below, the court agrees with Cavegn's first two arguments and will remand the case for further proceedings.

ANALYSIS

A. **Lack of medical opinions that considered Cavegn's left ankle and right knee impairments**

Cavegn says that the ALJ erred by failing to obtain a medical opinion on his left ankle and right knee impairments. (The ALJ did not find that Cavegn suffered from a severe impairment related to his right knee and Cavegn does not challenge that conclusion, but the ALJ was still required to consider the impairment in determining Cavegn's residual functional capacity. *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014).) Neither side describes the cause of those impairments, but the ALJ stated that Cavegn suffers from degenerative joint disease and peroneal tendinopathy in his left ankle. **R. 17**.

The ALJ gave great weight to the opinions of the state agency consultants, but the consultants prepared those opinions in June 2014, **R. 122–24**, which was before Cavegn began suffering from impairments in his left ankle and right knee. (Cavegn's treating physician provided an opinion as well, but it also predated Cavegn's left ankle and right knee impairments.) As a result, the consultants did not review various medical records related to those impairments, including records of multiple surgeries, or Cavegn's own statements about how those impairments limited his abilities, including that he cannot stand for more than a half hour.

In reliance on the consultant opinions, the ALJ concluded that Cavegn retained the following residual functional capacity:

> [He can] lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours each in an 8-hour workday; and push and pull as much as he can lift and carry. He can frequently operate foot controls bilaterally and occasionally operate hand controls with the right hand. He can frequently handle bilaterally. He can never climb ladders, ropes, scaffolds,

> ramps, or stairs, and occasionally balance, stoop, kneel, crouch, and crawl. . . .

**R. 21**.

Cavegn says that, if the ALJ had incorporated his ankle and knee impairments and limited him to sedentary work, he would be disabled as a matter of law under 20 C.F.R. Part 404, Subpart P, Appendix 2. § 201.12. The Commissioner does not deny that Cavegn would qualify for benefits if he were limited to sedentary work and she does not deny that the new medical records are potentially significant. Instead, she says that the absence of any medical opinions on Cavegn's left ankle and right knee impairment is not a problem because the ALJ considered all of the relevant evidence himself and determined that the alleged limitations "are not wholly consistent with the evidence of record." **R. 24.**

It is well established that "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (internal quotations omitted). *See also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The Commissioner simply ignored this rule in her opposition brief, even though Cavegn cited several cases in which the court of appeals relied on it. Because the ALJ provided no grounds in his decision for failing to obtain a medical opinion about Cavegn's left ankle and right knee impairments, Cavegn is entitled to a remand.

**B. Alleged limitations that ALJ failed to consider**

Cavegn says that the ALJ noted but failed to adequately consider three alleged limitations that Cavegn testified about at the administrative hearing: (1) the need to use a cane to ambulate; (2) the need to elevate his legs when sitting for more than 15 minutes because of

3

swelling; and (3) the inability to stand or walk for more than a half hour.[1] The court will consider each limitation in turn.

As for Cavegn's use of a cane, the Commissioner points to two references that the ALJ made. First, the ALJ wrote that Cavegn "did not establish that he would need his cane once he got to his workstation and began working." **R. 28.** But neither the ALJ nor the Commissioner cited any evidence to support that statement or even explained what it meant. When Cavegn testified at the hearing that he used a cane, **R. 57–58**, the ALJ did not ask him any questions about using the cane at a "workstation." If the ALJ meant that Cavegn did not need a cane while seated, then the ALJ's conclusion is inconsistent with his own residual functional capacity assessment, which states that Cavegn can stand and walk for up to six hours a day.

Second, the ALJ wrote that Cavegn did not use a cane at a physical therapy appointment in 2015. **R. 18.** But that was only an observation; the ALJ did not purport to rely on that incident as showing that Cavegn did not need to use a cane. And if he *had* relied on it, it would have been an error because he neither explained why a single incident in January 2015 would show that Cavegn did not need a cane now nor asked Cavegn why his use of a cane was inconsistent. Before relying on a seeming inconsistency to deny benefits, the ALJ must give the claimant an opportunity to explain. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), *Shauger v. Astrue*, 675 F.3d 690, 696–97 (7th Cir. 2012).

As for Cavegn's leg swelling, the Commissioner's only response is that Cavegn did not ask the ALJ for a limitation for keeping his legs elevated. But that argument fails because it is

---

[1] Cavegn says more generally that the ALJ failed to adequately explain why he did not find Cavegn to be fully credible, but these are the only three statements Cavegn discusses in his briefs.

4

well established that "it is the ALJ who carries the burden of developing the record," even when the claimant fails to do so. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

As for Cavegn's ability to walk and stand, the Commissioner relies on the ALJ's more general reasoning for finding that Cavegn's statements "are not fully consistent with the evidence as a whole." **R. 29.** But the ALJ cannot simply ignore alleged limitations. *Plessinger v. Berryhill*, No. 18-1240, 2018 WL 3965887, at *6 (7th Cir. Aug. 20, 2018) (ALJ's credibility determination inadequate in part because "he did not really explain . . . why he did not believe Plessinger's testimony that he could not walk more than a very short distance and had to lie down several times during the day to manage his pain"). And even if the court assumes that the ALJ did not need to address each limitation separately, his reasoning does not withstand scrutiny.

Again, the Commissioner relies on the ALJ's conclusions that Cavegn's ankles were improving, and again, that argument fails because it relies on the ALJ's own medical judgment. The ALJ also observed repeatedly that Cavegn had a part-time job as a building manager. But the court of appeals has cautioned against relying too heavily on a claimant's continued working. "[T]he fact that someone works is not a sufficient ground for concluding that she's not disabled. We have explained that even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits. This is especially likely when the work is part time." *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014).

That was the situation in this case: Cavegn only worked 20 hours a week. And the ALJ acknowledged that Cavegn was the building manager "at the apartment complex where he lives, which helps him maintain his housing," **R. 23**, suggesting that the job is one of necessity. The

5

ALJ also acknowledged Cavegn's testimony that "the work is not regular" and that he would not be able to maintain the job full time. *Id.* In describing Cavegn's duties, the ALJ suggested that Cavegn had a great deal of latitude in determining his own hours. *E.g., id.* (noting that Cavegn could delay tasks if "he is having a bad day"). Under these circumstances, Cavegn's part-time work was not inconsistent with his claim of disability. *Cf. Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016) ("[E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40–hour–a–week job is perilous. At home one has much greater flexibility about when and how hard and how continuously to work; one can rest during the day (which one can't do in a 9–to–5 job); and sheer necessity may compel one to perform tasks at home no matter how painful.").

The ALJ also observed that Cavegn performed activities such as volunteering and driving, **R. 20**, but he did not explain how those activities showed either that Cavegn could stand for more than 30 minutes or more generally that he could work full time. *Voigt v. Colvin*, 781 F.3d 871, 878 79 (7th Cir. 2015) (ALJ must explain how daily living activities show ability to work full time).

**C. Obesity**

Cavegn's last objection is that the ALJ did not discuss how Cavegn's obesity affected his limitations. Cavegn does not explain how his obesity heightened any of his limitations, so that is not an independent ground for reversal. *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work.") (internal quotations omitted). On remand, if Cavegn can identify additional evidence in the record, he is free to ask the ALJ to consider that evidence.

**D. Conclusion**

The ALJ erred by acting as his own medical expert and by failing to adequately consider three of Cavegn's alleged limitations. On remand, the ALJ should (1) obtain an expert to review the records related to Cavegn's left ankle and right knee impairments; (2) consider all of the alleged limitations and explain his conclusions; and (3) conduct a new credibility assessment.

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying plaintiff Daniel Cavegn's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The September 20, 2018 oral argument is CANCELED as unnecessary.

Entered August 28, 2018.

BY THE COURT:
/s/

_____
JAMES D. PETERSON
District Judge